UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIONNE DAVIS,                                    Case No. 19-cv-12488

              Plaintiff,                         SENIOR U. S. DISTRICT JUDGE
                                                 ARTHUR J. TARNOW
              v.
                                                 U.S. MAGISTRATE JUDGE
WAYNE COUNTY COMMUNITY                           DAVID R. GRAND
COLLEGE DISTRICT,

              Defendant.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION [11]**

Plaintiff, Dionne Davis, brings this case against her employer Defendant
Wayne County Community College District ("WCCD") alleging violations of the
Americans with Disabilities Act ("ADA") for disability discrimination and failure
to accommodate. 28 USC §1331; 42 USC §12101. In 2012 and 2015, Plaintiff
sustained neck and back injuries from car accidents. Defendant accommodated her
injuries with an ergonomic workstation. In 2019, Plaintiff went on leave from work
under the Family Medical Leave Act ("FMLA"). Because Plaintiff and Defendant
disagreed on whether the work schedules available to her were reasonable
accommodations for her disability, she has yet to return to work. On March 26, 2020,
Plaintiff filed a Motion for Preliminary Injunction to order Defendant to return her

to work based on her proposed modified work schedule and provide her with back pay. On April 16, 2020, Defendant filed Response [13]. On April 30, 2020, Plaintiff filed a Reply [14]. The Court held a hearing on the motion on July 1, 2020. For the reasons stated below, and on the record, Plaintiff's Motion for Preliminary Injunction [11] is **GRANTED IN PART and DENIED IN PART**.

## FACTUAL BACKGROUND

Plaintiff has worked for the Defendant as a general clerk for over 28 years. (ECF No. 1 ¶ 6). In October of 2012, Plaintiff sustained neck and back injuries from a motor accident. (ECF No. 11-3, 11-13). Defendant subsequently accommodated her disability with an ergonomic workstation. (ECF No. 11-3).

On March 25, 2013, Plaintiff's physician, Dr. Samuel, recommended Plaintiff go on FMLA leave for three to four times a week for medical appointments and physical therapy. (ECF No. 11-3).

In 2015, Plaintiff sustained injuries from another motor accident, which aggravated her prior injuries. Defendant then further accommodated her disability with a footrest and headset. (ECF No. 11-13, 13-3).

Plaintiff originally worked a schedule of Monday through Friday from 8 a.m. to 4 p.m. (ECF No. 13-3). Then in early December of 2018, all of Defendant's employees were asked to select from a set of new work schedules. Plaintiff first selected and was assigned the following schedule: Tuesday from 8:30 a.m. to 4:30

pm, Wednesday and Thursday from 11 a.m. to 7 p.m., Friday from 9 a.m. to 5 p.m., and Saturday from 7:30 a.m. to 3:30 p.m. (ECF No. 13-6).

On January 11, 2019, Plaintiff emailed Defendant that she would be on FMLA leave with an unsure return date. (ECF No. 13-10). On January 15, 2019, Dr. Samuel sent a letter to Defendant stating that Plaintiff has cervical and lumbar radiculopathy and should end her workdays by 4 p.m. in order to attend medical appointments and physical therapy. (ECF No. 13-12). Dr. Samuel also wrote that (a) therapy is only available during the week and (b) Plaintiff cannot work weekends because she needs two consecutive days of rest a week. (*Id.*).

On March 26, 2019, Plaintiff's head and shoulder specialist, Dr. Tong, wrote to Defendant that Plaintiff may return to work on April 8, 2020, provided she is accommodated with an ergonomic workstation and allowed to leave for therapy as needed. (ECF No. 11-7, 13-13).

On April 3, 2019, Plaintiff's internal medicine specialist, Dr. Golden, wrote to Defendant that Plaintiff may return to work on April 8th with "no restrictions," but that Plaintiff can only work Monday through Friday from 8 a.m. to 4 p.m. in order to make medical appointments. (ECF No. 11-8, 13-14). On April 8th, Plaintiff submitted her physical therapy schedule as requested by Defendant; the schedule shows physical therapy occurring on Tuesdays and Thursdays from 4 p.m. to 6 p.m. (ECF No. 13-15). Also, on April 8th, Plaintiff emailed Defendant and claimed that

one of Defendant's employees barred Plaintiff from returning to work because an ergonomic workstation was unavailable. (ECF No. 11-9).

On July 24, 2019, Plaintiff emailed Defendant asking about her employment status and why her benefits were suspended if she was still an employee. (ECF No. 11-10). In her email, Plaintiff also claimed that her short-term disability pay had ended, and she was barred from speaking to management when she attempted to contact Human Resources via the phone and in person. (*Id*.).

On October 24, 2019, Defendant sent a letter to Plaintiff stating multiple issues with the documents sent from her doctors and physical therapists. (ECF No. 11-12, 13-16). Defendant called Dr. Golden's letter contradictory for stating Plaintiff could return to work with "no restrictions" but also demanding she work restricted hours. (*Id*.). Defendant also took issue with Dr. Tong's letter, which requested a modified work schedule but did not specify when physical therapy would occur. (*Id*.). Defendant took issue with Dr. Tong's demand to restrict Plaintiff's work to 4 p.m. Monday through Friday when Plaintiff's physical therapy schedule only displayed appointments on Tuesdays and Thursdays from 4-6 p.m. (*Id*.). Defendant also noted that no doctor explained why the accommodations were needed and how they related to Plaintiff's essential work functions. (*Id*.). Defendant then offered Plaintiff the following modified work schedule: Monday through Friday 7 a.m. to 3 p.m. (*Id*.).

On November 4, 2019, Dr. Golden sent a letter to Defendant that requesting a modified work schedule of 7:30 a.m. to 3:30 p.m., because Plaintiff experiences morning stiffness. (ECF No. 13-17). Dr. Golden also stated that a workstation, headset, and footrest would assist Plaintiff in completing her clerical duties for Defendant. (*Id.*).

On December 6, 2019, Plaintiff received a Complaint and Summons for eviction due to nonpayment of her rent. (ECF No. 11-22). Plaintiff had paid through October 30, 2019. (*Id.*).

On January 22, 2020, Plaintiff and Defendant engaged in an Interactive Process Meeting, a type of meeting required by the ADA in order to come to a resolution about work accommodations as needed. (ECF No. 11-16, 13-18). On January 24, 2020, Defendant offered Plaintiff an ergonomic workstation and the following schedule: Tuesday and Thursday from 8 a.m. to 4 pm, Wednesday and Friday from 11 a.m. to 7 p.m., and Saturday from 8:30 a.m. to 4:30 p.m. (ECF No. 11-16, 13-19). On January 27, Plaintiff asked Defendant how a 7:30 a.m. to 3:30 p.m. schedule would place an undue burden onto the Defendant. (ECF No. 11-17, 13-19). On January 30, Defendant sent a letter which stated its last offered schedule met Plaintiff's needs for physical therapy Tuesdays and Thursdays and that Defendant is willing to grant Plaintiff time off on Wednesdays "from time to time" and "with notice" if appointments are needed on Wednesdays. (ECF No. 13-20).

On February 10, 2020, Plaintiff sent a letter arguing that a 7:30 a.m. to 3:30 p.m. work schedule would not place undue burden onto the Defendant because three of the Defendant's clerks already work 7:30 a.m. to 3:30 p.m. (ECF No. 13-21). On February 12, Defendant stated that their last offered schedule was already a reasonable accommodation because it began after 7:00 a.m. and ended by 4:00 p.m. (ECF No. 11-15, 13-12). Defendant claimed that it needed clerk coverage at all times, therefore, Plaintiff's proposed schedule creates an undue burden by reducing clerk coverage by 30 minutes from 7:00 a.m. to 7:30 a.m. (*Id.*). Defendant also stated that if Plaintiff did not report to work on February 25, 2020, "without sufficient explanation or additional medical documentation," then it would consider Plaintiff voluntarily resigned. (*Id.*). On February 28, 2020 Defendant sent a letter of termination to Plaintiff "due to voluntary resignation" because Plaintiff did not report to work on February 25, 2020 and "did not provide any additional medical information." (ECF No. 11-16).

## PROCEDURAL BACKGROUND

Plaintiff filed suit against Defendant on August 13, 2019 for ADA violations. (ECF No. 1). After she was informed of her voluntary resignation, Plaintiff filed a Motion for Preliminary Injunction [11] on March 6, 2020. Plaintiff asks the Court to order Defendant to provide back pay and allow her to return to work on a schedule of Monday through Friday from 7:30 a.m. to 3:30 p.m.

## LEGAL STANDARD

When determining whether to order a preliminary injunction, the Court considers four factors: 1) the movant's likelihood of success on the merits for the case itself, 2) whether denying an injunction causes the movant to suffer irreparable injury, 3) whether granting an injunction causes substantial harm to the nonmovant, and 4) whether public interest is better served by denying or granting the injunction. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). No single factor is dispositive when factors compete. *Gonzales v. Nat'l Bd. of Medical Examiners*, 225 F.3d 620, 625 (6th Cir. 2000). However, successful motions for preliminary injunctions necessarily include a showing of imminent irreparable harm. *Friendship Materials, Inc. v. Michigan Brick, Inc*, 679 F2d 100, 105 (6th Cir 1982). Further, when there is little or no likelihood of success, the request almost certainly fails. *Gonzales*, 225 F.3d at 625. Plaintiff must prove the circumstances at bar "clearly demand" the "extraordinary remedy" of a preliminary injunction. *Overstreet v. Lexington–Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

## ANALYSIS

### 1. Likelihood of Plaintiff's Success On the Merits

For preliminary injunction analysis, the likelihood of success a movant must show "var[ies] inversely with the degree of injury the [movant] will suffer

absent an injunction." *Roth v Bank of the Commonwealth*, 583 F.2d 527, 537-38 (6th Cir. 1978). Therefore, a movant is asked to show lower likelihoods of success when requesting an injunction to prevent greater injuries. Courts apply a "realistic appraisal of all the traditional factors weighed by a court of equity . . . not the mechanical application of a certain form of words." *Id.* While no single factor controls this realistic appraisal, a lack of "likelihood of success on the merits is usually fatal." *Gonzales*, 225 F.3d at 625.

### a. Legal Standard: ADA Accommodation Claims

For Plaintiff to succeed in her ADA claims based on failure to accommodate, she must first establish that she is disabled. *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 811 (6th Cir. 2020). Plaintiff must then establish that she is qualified for her position in at least one of the following scenarios: without accommodation, with removal of an alleged essential job requirement, or with a proposed reasonable accommodation. *Id.* Employees have a duty to propose the reasonable accommodation. *Smith v. Ameritech*, 129 F.3d 857 (6th Cir. 1997). Employers carry the burden to prove that a proposed accommodation will cause undue hardship to the employer. *Tchankpa*, 951 F.3d at 811. Even if the employee's proposed accommodation is reasonable, the employer retains the right to execute an alternative reasonable accommodation. *Smith v. Honda Am. Mfg., Inc.*, 101 F. App'x 20, 25 (6th Cir. 2004).

Here, there is no dispute between the parties that Plaintiff was disabled after her car accident, qualified for her position, or that Defendant was aware of her disability. (ECF No. 11-4, 13-1, 13-2). The parties disagree about the reasonableness and the medical necessity of Plaintiff's proposed accommodation, the reasonableness of Defendant's proposed accommodation, and Defendant's involvement in the ADA interactive process.

### b. Reasonableness of Davis's Proposed Accommodation

The Sixth Circuit has ruled that accommodations remain reasonable even when they cause production to decrease or costs to increase. *Smith v Henderson*, 376 F3d 529 (6th Cir. 2004). However, accommodations are unreasonable when they result in "significant difficulty or expense." *Id*. This undue hardship must be "greater than hardship" and accommodations are not unreasonable just because they are "bothersome to administer or disrupt the operating routine." *Draper v. U.S. Price & Foundry*, 527 F.2d 515 (6th Cir. 1975).

The employee carries the burden of proof to show that an accommodation is reasonable on its face. *US Airways, Inc v Barnett*, 535 U.S. 391, 402 (2002). Plaintiff argues that her proposed modified work schedule of 7:30 a.m. to 3:30 p.m. is reasonable because "modified work schedules" are specifically listed as an example of a reasonable ADA accommodation. 42 USC §12111(9)(B). Since Plaintiff

proposes an accommodation which is specifically listed in 42 USC §12111(9)(B), her modified work schedule of 7:30 a.m. to 3:30 p.m. is reasonable on its face.

The burden then shifts to the employer to show that a proposed accommodation is unreasonable by showing how the accommodation unduly burdens the employer. Defendant maintains that Plaintiff's proposed accommodation of a modified work schedule from 7:30 a.m. to 3:30 p.m. creates an undue burden because Defendant staffs two general clerks from 7:00 a.m. to 7:30 a.m. (ECF No. 13-28), and Plaintiff's later start would cause them to be understaffed for 30 minutes five days a week. (ECF No. 13, PageID. 143-44). Defendant claims this understaffing creates undue hardship because campus opens at 7:00 a.m. and events begin as early as 7:00 a.m. (ECF No. 13-28).

Defendant supplied an Event Calendar to represent one month of its operations. (ECF No. 13-26). On the Calendar, only one event began at 7:00 a.m., and the Calendar itself began at 8:00 a.m. *Id*. Defendant does not supply any caselaw which advances the unreasonableness of being understaffed for 30 minutes in the morning. Defendant has failed to show that Plaintiff's proposal would incur "significant burden or expense" above a "disrupt[ion] of operating routine" because the Event Calendar provided to exemplify Defendant's operations included only one event a month which occurred during the 30 minute period in question. Therefore,

Plaintiff's proposed accommodation of a modified work schedule of Monday through Friday 7:30 a.m. to 3:30 p.m. is a reasonable accommodation.

### c. Medical Necessity of Davis's Accommodation

In determining the medical necessity of a disability accommodation, the Sixth Circuit states that employers do not need to take an employee's word that she has a disability which requires a special accommodation. *E.E.O.C. v. Prevo's Family Market, Inc.*, 135 F.3d 1089, 1094–95 (6th Cir. 1998). Employers may require an employee to provide medical documentation which proves her disability requires accommodation. *Kennedy v. Superior Printing Co.*, 215 F.3d 650, 656 (6th Cir. 2000). If an employee fails to provide documentation requested by the employer, the employee is precluded from raising a failure to accommodate claim. *Tchankpa*, 951 F.3d at 812.

While employers are entitled to question the adequacy of an employee's statement of disability, the Sixth Circuit addressed an employer's entitlement to question the adequacy of an employee's medical documentation in *McDonald v. UAW-GM Center for Human Resources*. No. 17-1875, 2018 WL 3081313 at *4 (6th Cir. June 21, 2018). In *McDonald*, the employee presented her employer with a physician's letter which stated, "Please allow [employee] to continue strengthening exercises daily for 30 to 60 minutes Monday through Friday." *Id*. at *1. The employee proposed an accommodation which combined her 30-minute lunch break

and one of her two 15-minute breaks to complete her exercises. *Id*. The Sixth Circuit found that the physician's note was too vague for the employee's proposal to be medically necessary because there was no language which stated the exercises needed to be done all at once or at a specific time of the day. *Id*.

Here, Defendant relies on *McDonald* to assert that the letters from Plaintiff's physicians and physician therapists are also overly vague such that a proposed schedule of Monday through Friday from 7:30 a.m. to 3:30 p.m. is not medically necessary. (ECF No. 13, PageID. 145). Defendant claims Plaintiff's letters are like the *McDonald* employee's letters in that both do not explain why therapy must occur when the employee requests it to occur. *Id*. Defendant claims that Plaintiff's proposed schedule lacks medical support from the physician letters and the letters do not link Plaintiff's schedule to her ability to perform her essential duties as a general clerk. *Id*. Defendant also claims the letters fail to explain how Plaintiff starting her workday 30 minutes later would "eliminate morning stiffness." *Id*.

Plaintiff distinguishes her situation from *McDonald*. She points out that the physicians in *McDonald* do not request a modified schedule whereas Plaintiff's physicians specifically request a 7:30 a.m. to 3:30 p.m. schedule. (ECF No. 11-13, 13-17). Plaintiff's physician explains that the earliest she can work is 7:30 a.m. due to her morning stiffness which arises from her cervical and lumbar radiculopathy. (ECF No. 13-12). Plaintiff's letters explain that she cannot work weekends because

her disability requires two consecutive days of rest, and the physical therapy services capable of treating her are unavailable on weekends. *Id*. Whereas the physician letters in *McDonald* do not link the workouts to the employee's work, Plaintiff's physicians request a workstation, footrest, and modified work schedule to assist Plaintiff in physically performing her duties as general clerk. (ECF No. 11-13, 13-17).

While Defendant has the right to request medical documentation to authenticate the medical necessity of Plaintiff's proposed accommodation, Plaintiff has fulfilled these requests by consistently offering medical documentation which specifically calls for and explains why a 7:30 a.m. to 3:30 p.m. schedule is medically necessary. Therefore, Plaintiff fulfilled her duty to propose a reasonable accommodation that is medically necessary.

### d. Reasonableness of WCCD's Counter Accommodation

Even if the employee's proposed accommodation is reasonable, the employer retains the right to execute an alternative reasonable accommodation. *Smith*, 101 F. App'x at 25. The employer holds the "ultimate discretion" in choosing between reasonable accommodations, and the employer may choose whichever is easier to implement. *Id*. The court has ruled that modified work schedules which induce logistic impracticability, such as offering a schedule which precludes an employee

from continuing to use public transportation, are unreasonable. *Pattison v. Meijer, Inc.*, 897 F. Supp. 1002, 1008 (W.D. Mich. 1995).

Here, Defendant claims to have provided two reasonable accommodations which it favors over Plaintiff's proposed schedule. The first schedule is Monday through Friday from 7:00 a.m. to 3:00 p.m. However, this schedule directly conflicts with Plaintiff's physician letter which states that working at 7:00 a.m. is too early for Plaintiff because she is still dealing with morning stiffness resulting from cervical and lumbar radiculopathy at that time. (ECF No. 11-13, 13-17). The second schedule is Tuesday and Thursday from 8 a.m. to 4 pm, Wednesday and Friday from 11 a.m. to 7 p.m., and Saturday from 8:30 a.m. to 4:30 p.m. (ECF No. 11-16, 13-18). However, this schedule conflicts with Plaintiff's physical therapy appointments, which Defendant was informed begin at 4 p.m. on Tuesdays and Thursdays. (ECF No. 13-15). Therefore, Defendant's counter accommodations are unreasonable because they make it impossible for her to attend physical therapy and fulfill her work schedule, which imposes a logistical impracticability.

### e. WCCD's Involvement in the Interactive Process

When an employee proposes an accommodation to her employer for her disability, the ADA requires both parties to participate in an interactive process with a level of good faith. *Kleiber v. Honda of America Manufacturing*, 485 F.3d. 862 (6th Cir. 2007). An employer acts in good faith when it "readily meets with the

employee, discusses any reasonable accommodations, and suggests other possible positions for the plaintiff." *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 557 (6th Cir. 2008). The employer is not required to propose counter accommodations in order to participate in the interactive process in good faith but doing so may be additional evidence of good faith. *Jakubowski v. Christ. Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010). Neither party may obstruct the process or refuse to participate. *Id*. However, employers need not immediately implement or accept accommodations proposed by an employee. *Tchanka*, 951 F.3d at 812. Therefore, an employer's delay in providing a reasonable accommodation is not actionable when due to internal processing or to events outside the employer's control. *Gerton v. Verizon S. Inc.*, 145 F. App'x 159, 168 (6th Cir. 2005). More time is given for novel requests. *Arndt v. Ford Motor Co.*, 716 F. App'x 519, 527–28 (6th Cir. 2017). The Sixth Circuit has decided an exemplary case where a proposal for an employee to work with a service animal was considered a novel request, and the court allowed the employer to review the request for three months. *Id*.

Here, Plaintiff claims the Defendant did not act in good faith since the Defendant excessively delayed and "refused to communicate with [Plaintiff] at all for more than six months." (ECF No. 11 at 21). Plaintiff's physicians cleared her to return to work by April 8, 2019. (ECF No. 11-7, 11-8, 13-13, 13-14). In response, Defendant requested Plaintiff's physical therapy schedule, which she provided on

April 8, 2019. (ECF No. 13-15). Despite Plaintiff's attempts to contact Defendant's management, Plaintiff did not receive contact from Defendant regarding her accommodation until October 24, 2019. (ECF No. 11-12, 13-16). The interactive process meeting was not held until January 22, 2020. (ECF No. 11-16, 13-18).

Defendant displayed evidence of good faith in providing multiple counter accommodations schedules and consistently communicating their concerns to Plaintiff about her proposals from October 24, 2019 onward. However, the ADA calls for an informal interactive process, and Defendant did not communicate with Plaintiff about her proposed accommodation until after she filed suit.

Although Defendant provided counter accommodations which are not required by the ADA and generally signal good faith, these actions are outweighed by Defendant's six-month delay in responding to Plaintiff about her proposed accommodation. While delays do not instantly cast a party as acting in bad faith, Defendant delayed the interactive process by over twice the time the Sixth Circuit has held is an acceptable delay for *novel* proposed accommodations. However, Plaintiff's proposed accommodation for a modified work schedule is not novel. *See* 42 USC §12111(9)(B); *See also E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 761 (6th Cir. 2015); *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). Therefore, it is unlikely WCCD reasonably engaged in the interactive process in good faith as required by the ADA.

### f. ADA Claims: Conclusion

Since there is no dispute that Plaintiff is disabled, Plaintiff presented a reasonable accommodation in the form of a modified work schedule, Defendant failed to prove Plaintiff's proposed schedule will cause significant injury to the college, Defendant failed to counter with an alternative reasonable accommodation, and Defendant signaled a lack of good faith by delaying the interactive process for over six months, Plaintiff is likely to succeed on her ADA claims.

## 2. Movant's Harm without an Injunction

In successful motions for a preliminary injunction, the movant's argument must include a showing of imminent irreparable harm. *Friendship*, 679 F2d at 105. The "possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs against a claim of irreparable harm." *Sampson v. Murray*, 415 US 61, 90 (1974). While "the harm alleged must be both certain and immediate," a movant can substantiate a claim that irreparable injury will occur by providing "some evidence that the harm has occurred in the past and is likely to occur again." *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). Courts have determined that evictions resulting from a denied preliminary injunction constitute irreparable harm because "a piece of real property is unique" and that the possibility of homelessness from evictions is also an irreparable harm. *Sayo, Inc. v. Zions First Nat. Bank*, No. 06-CV-14963 DT,

2006 WL 3240706, at *2 (E.D. Mich. Nov. 7, 2006). Foreclosure sale date is proof that an eviction is imminent. *Id*. An eviction notice or court order of eviction may also show that an eviction is imminent. *Farrell v. U.S. Bank Nat. Ass'n*, No. 14-CV-11781, 2014 WL 2480055, at *2 (E.D. Mich. June 3, 2014).

Here, Plaintiff claims that, without an injunction, she will suffer immediate irreparable harm in the form of an eviction. (ECF No. 11 at 23-24). Since her termination, Plaintiff has been underemployed, cannot pay rent, and has faced eviction multiple times. (ECF No. 11 at 23-24, 11-22). Plaintiff claims she was able to avoid eviction due to donations from charitable organizations and family, but those solutions are no longer available. *Id*.

Defendant argues that Plaintiff has not shown irreparable injury because her injury (eviction) is economic in nature. (ECF No. 13 at 19). Defendant relies on *Farrell v. U.S. Bank Nat. Ass'n* to assert that since Plaintiff has not submitted a current court order for eviction, that her injury is not imminent. No. 14-CV-11781, 2014 WL 2480055, at *2; (ECF No. 13 at 146-47). Defendant additionally notes that Plaintiff's eviction is not imminent because Governor Gretchen Whitmer signed Executive Order 2020-19 to suspend all evictions due to the COVID-19 pandemic. *Id*.

Courts in this district have ruled that eviction is an irreparable harm. *See Galper v. U.S. Shoe Corp.*, 815 F. Supp. 1037, 1044 (E.D. Mich. 1993), *Sayo*, No.

06-CV-14963 DT, 2006 WL 3240706, at *2, and *Dewald v. Christiana Tr.*, No. 14-CV-13680, 2014 WL 4829548, at *2 (E.D. Mich. Sept. 29, 2014). Plaintiff has demonstrated that eviction proceedings and the possibility of homelessness have occurred to her in the past due to her underemployment, and are likely to occur again since she remains underemployed. The executive orders Defendant relies on do not thwart Plaintiff's showing of imminence. Executive Order 2020-19 which Defendant refers to has since expired, and the newest relevant order, Executive Order 2020-134, expires universal eviction protection on July 15, 2020 at 11:59 p.m. After July 15, Executive Order 2020-134 will protect only those residents whose household income meets the area's median income and show that their inability to pay rent stems from a "state of emergency or state of disaster arising out of the COVID-19 pandemic." Therefore, Plaintiff has shown that, without an injunction for her to return to work for the Defendant, she will incur imminent irreparable harm in the form of an eviction.

### 3. Non-movant's Harm with an Injunction

Plaintiff claims the preliminary injunction to return her to work would cause no harm to Defendant. Plaintiff asserts that Defendant "would simply be putting Plaintiff back to work in a schedule that conforms with her physician's restrictions as well as her medical needs." (ECF No. 11, PageID. 60). Since Defendant has not filled Plaintiff's position for over a year, Plaintiff concludes that her return to work

would reduce Defendant's current understaffing from 7:00 a.m. to 3:00 p.m. to just

7:00 a.m. to 7:30 a.m. *Id.*

Defendant does not address its harm caused by Davis in the event of a

preliminary injunction. However, Defendant claimed that the accommodation of

Plaintiff working 7:30 a.m. to 3:30 p.m., which Plaintiff is asking for, would impose

an undue burden onto the Defendant. Defendant argues that Plaintiff's 7:30 a.m. start

time creates undue hardship for Defendant because the campus opens at 7:00 a.m.

and events begin as early as 7:00 a.m. (ECF No. 13-28). However, Defendant

supplied an exemplary Event Calendar which did not begin until 8:00 a.m. and

included only a single one-day event with a special note that it started at 7:00 a.m.

(ECF No. 13-26). Further, both Defendant's and Plaintiff's proposed schedules are

eight-hour work days.

Therefore, Defendant will not incur harm under an injunction, because the

events Defendant points to that occur from 7:00 a.m. to 7:30 a.m. are infrequent,

Defendant has been understaffed for a year without Plaintiff returning as a general

clerk, and Plaintiff's proposed schedule does not reduce the amount of hours she will

work.

## 4. Public Interest

The ADA was created with the purpose of "ridding the Nation of

discrimination." *Clackamas Gastroenterology Assocs.*, P. C. v. Wells, 538 U.S. 440,

446 (2003). Congress passed the ADA "to address the serious and pervasive social problem of disability-based discrimination on a case-by-case basis." *Michigan Flyer LLC v. Wayne County Airport Authority*, 860 F.3d 425 (6th Cir. 2017). In passing the ADA, Congress made a value judgement such that individuals with disabilities access to "gainful employment," "financial independence," and "self-sufficiency" "outweigh simple calculations of ease or efficiency." *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 849 (6th Cir. 2018). To meet these goals, the ADA requires employers provide disabled employees with reasonable accommodations, including allowing modified work schedules. *Id*. Therefore, the public interest in this matter favors the movant in providing Plaintiff gainful employment with financial independence and self-sufficiency to avoid eviction without reliance on charitable organizations and family.

## CONCLUSION

In determining whether to grant or deny a preliminary injunction, the Court is asked to balance four factors, each of which weigh in Plaintiff's favor. Plaintiff is likely to succeed on the merits of her case because she is undisputedly disabled and proposed a reasonable accommodation, while Defendant failed to prove Plaintiff's proposed schedule would unduly burden the college, failed to counter with an alternative reasonable accommodation, and signaled a lack of good faith by delaying the interactive process for over six months. Without an injunction, Plaintiff is likely

to incur imminent irreparable harm in the form of an eviction. With an injunction, Defendant would not incur harm upon Plaintiff's return under her proposed schedule. Public interest weighs in favor of reasonably accommodating disabled individuals for them to achieve gainful employment and financial independence. Therefore, the Court grants Plaintiff's request to return to work Monday through Friday, 7:30 a.m. to 3:30 p.m.

Plaintiff's motion also calls for back pay from April 8, 2019 to the date of her reinstatement. However, it is settled law that economic loss alone, absent evidence of "financial ruin," does not constitute irreparable harm, because it is generally recoverable through legal remedies. *SEIU Health Care Michigan v. Snyder*, 875 F. Supp. 2d 710, 723 (E.D. Mich. 2012). Because back pay is purely economic in nature and Plaintiff has not argued that back pay alongside a return to work is necessary to avoid imminent irreparable harm, the Court denies this request.

Finally, the Court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c). Based the Court's prior analysis that Defendant will not incur harm if Plaintiff is returned to work, the bond in this matter is set at $0.00.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to for Preliminary Injunction [11] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendant allow Plaintiff to return to work on **Monday, July 6, 2020** under the modified work schedule of Monday through Friday, 7:30 a.m. to 3:30 p.m.

**SO ORDERED**.


                                        s/Arthur J. Tarnow
                                        Arthur J. Tarnow
Dated: July 2, 2020                     Senior United States District Judge